| | |
|---|---|
| THOMAS SCHROCK, <br><br> Plaintiff, <br><br> v. <br><br> AETNA LIFE INSURANCE COMPANY, <br><br> Defendant. | No. 15 C 10582 <br><br> Magistrate Judge Mary M. Rowland |

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Thomas Schrock's Motion to Compel Discovery. (Dkt. 28). Schrock filed this lawsuit against Defendant Aetna Life Insurance Company seeking the reinstatement and payment of long-term disability benefits pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA). Plaintiff's motion to compel was granted in part in open court on May 10, 2016. (Dkt. 32). The only remaining issue is whether Plaintiff is entitled to discovery related to Aetna's alleged structural conflict of interest as both the plan administrator and payor of benefits. For the foregoing reasons, the remainder of Plaintiff's Motion to Compel Discovery is denied.

## I. Background

Plaintiff Thomas Schrock brings this action seeking long term disability (LTD) pursuant to his former employer URS Corporation's benefit plan. Defendant Aetna Life Insurance Company, who insures the plan, contends that Schrock is not

entitled to any benefits under the terms of the URS Corporation Welfare Benefits Plan.

Schrock was initially awarded short term disability and LTD for the first 24 months of the LTD plan. (Dkt. 29 ¶ 7). On February 18, 2015, Aetna terminated benefits because it determined Schrock had sedentary physical functional capacity, and was capable of working in alternative occupations. (*Id.* ¶ 8). The decision was based, in part, on a February 5, 2015 report by Nancy Robinson, a vocational consultant and employee of an Aetna subsidiary. (*Id.* ¶ 10). In generating her report, Robinson was instructed to use $16.46 per hour as the reasonable wage set for Schrock. This amount was calculated as 70% of his pre-disability earnings. Robinson listed four occupations that satisfied all aspects of Schrock's transferable skills and functional abilities and identified the United States Bureau of Labor Statistics (BLS) mean wage for each of those occupations (Geodetic Computator, Call Out Operator, Street Dispatcher, and Surveillance System Monitor). She also identified the salary.com wages in the 10-25 percentiles for three of the occupations (Call Out Operator, Street Dispatcher, and Surveillance System Monitor). (*Id.* ¶ 11; Dkt. 1-4). No salary.com wage was calculated for Geodetic Computator. (Dkt. 1-4 at 4-5). Robinson concluded that "4 occupations . . . are within the reasonable wage information per the BLS mean wage; however, the 4 occupations identified did not meet the reasonable wage as researched via salary.com, which would be the most appropriate wage to use." (Dkt. 29 ¶ 15; Dkt. 1-4 at 5). Significant to Plaintiff's claim is that Robinson noted that due to a lack of training in these alternative

occupations, Plaintiff could not earn the average wage for the three occupations she identified using the salary.com figures. Rather, she stated that the 10-25 percentiles of the salary.com wage data would be "most appropriate." (Dkt. 1-4 at 5). On February 18, 2015, the claims examiner terminated Plaintiff's benefits finding that Schrock could meet the wage requirement in any of the four occupations based on Robinson's opinion. (*Id.* ¶ 16).

On August 17, 2015, Plaintiff filed an appeal asserting that: (1) the claims handler incorrectly computed Plaintiff's wage at 70%, rather than 80%, of pre-disability earnings; (2) the claims handler erred in using the BLS mean wage statistics rather than the salary.com wage statistics, which the vocational consultant opined were more appropriate; and (3) the vocational consultant erred in assuming Mr. Schrock had attended some college, and therefore erroneously concluded he could work as a Geodetic Computator. (Dkt. 1-5).

On appeal, Aetna affirmed the decision to terminate benefits. (Dkt. 29-4). Aetna noted Plaintiff completed a work history and education questionnaire on October 29, 2012 indicating that he attained one year of college education. (Dkt. 29-4 at 3). With respect to the other concerns in the vocational report, the appeals specialist noted that Plaintiff was correct that the reasonable wage should have been calculated at 80% of Plaintiff's pre-disability earnings. Plaintiff's reasonable wage was recalculated at $19.41 per hour, and Robinson's Transferable Skills Analysis (TSA) report was sent back to the Vocational Rehabilitation department. (Dkt. 29-4 at 3). An addendum review was completed by Tamara Starbuck, a vocational

reviewer and Aetna employee, using the recalculated reasonable wage. (*Id.*). The TSA Addendum calculated whether each of the four occupations identified by Ms. Robinson would qualify using the recalculated reasonable wage. For each occupation, Starbuck provided both the BLS mean wage, and the salary.com wage. Starbuck used the 10-25 percentile range Robinson had used for three of the occupations. Starbuck also included the salary.com mean wage for "Geodetic Computator," even though no salary.com figure was specified in Robinson's report. The report concluded that one occupation, Geodetic Computator, met the required reasonable wage for Mr. Schrock ($19.41/hour) under both the salary.com mean wage ($22.00/hour) and BLS mean wage ($23.90/hour). (Dkt. 29-5).

## II. Discussion

Plaintiff asserts Aetna has a structural conflict of interest because it is both responsible for paying benefits under the plan and determining benefits. Relying on *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), Schrock argues that plaintiffs in LTD cases are permitted to explore whether the insurer's structural conflict of interest influenced its decision-making process.

It is well-established that in ERISA cases discovery is generally not permitted and judicial review is limited to the administrative record. *Krolnik v. Prudential Ins. Co. of America*, 570 F.3d 841, 843 (7th Cir. 2009); *Weddington v. Aetna Life Ins. Co.*, No. 15 C 1268, 2015 WL 6407764, at *2 (N.D. Ill. Oct. 21, 2015) ("In instances where the plan at issue gives the plan administrator broad discretion to decide eligibility for benefits, judicial review is governed by the arbitrary and capricious

<hr />

<hr />

<hr />

<hr />

<hr />

<hr />

<hr />

<hr />

<hr />

<hr />

<hr />

<hr />

<hr />

<hr />

<hr />

<hr />

<hr />

<hr />

<hr />

<hr />

*Schrock v. Aetna Life Insurance Co.*, No. 15 C 10582     4

standard, based on a consideration of the administrative record, and discovery generally is not permitted."). In *Semien v. Life Ins. Co. of North America*, the Seventh Circuit explained that discovery beyond the claim file is limited to "exceptional cases." 436 F.3d 805, 815 (7th Cir. 2006). "First, a claimant must identify a specific conflict of interest or instance of misconduct. Second, a claimant must make a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination." *Id.* at 815. This standard for obtaining discovery sets "a high bar for individuals whose claims have been denied by a plan administrator with discretionary authority." *Id.*

After *Semien*, the Supreme Court found that when a plan administrator acts as both the administrator and the payor of benefits, there is a structural conflict of interest. *Glenn*, 554 U.S. at 114. However, in affirming that the arbitrary and capricious standard applies, the Court found that the presence of a conflict was "but one factor among many" that a reviewing judge must take into account when reviewing the decision of a plan administrator. *Id.* at 116. The conflict of interest could prove to be of greater importance "where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Id.* at 117. The conflict of interest could "prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims

*Schrock v. Aetna Life Insurance Co.*, No. 15 C 10582    5

administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Id.*

In *Dennison v. MONY Life Retirement Income Sec. Plan for Employees*, the Seventh Circuit noted that although "*Glenn* is not about discovery . . . it implies a role for discovery in judicial review of benefits determinations when a conflict of interest is alleged." 710 F.3d 741, 747 (7th Cir. 2013). *Dennison* noted that some cases following *Glenn* have inferred a "softening" of the *Semien* standard, *see, e.g., Fischer v. Liberty Life Assur. Co. of Boston*, 576 F.3d 369, 375 (7th Cir. 2009) ("The correct standard of review to be applied therefore remains the arbitrary and capricious standard, but one of the factors that must be taken into account in applying that standard is any conflict of interest."); *Marrs v. Motorola, Inc.*, 577 F.3d 783, 789 (7th Cir. 2009) ("The *likelihood* that the conflict of interest influenced the decision is . . . the decisive consideration . . . in the plan administrator's handling of the claim in issue.") (emphasis in original). However, *Dennison* is unequivocal that the two-part test set out in *Semien* remains, and moreover, "there can be no doubt that even when some discovery is necessary in a particular case to explore a conflict of interest, trial courts retain broad discretion to limit and manage discovery under Rule 26 of the civil rules." *Id.*

Following *Dennison*, cases in this Circuit have differentiated between "'run-of-the-mill' cases for which no conflict-related discovery is permitted, or 'exceptional' cases ([. . .] cases raising a suspicion of bias or misconduct) for which limited

discovery may be permitted." *Weddington*, 2015 WL 6407764, at *3. Cases that have allowed discovery have found evidence of a history of bias. For instance, in allowing discovery the *Warner* court considered the defendant's "disregard of [plaintiff's] physical therapist's functional capacity evaluation . . . ; its reliance on file reviews by consulting physicians instead of in-person examinations; [ ] alleged historical hostility toward fibromyalgia claims; and its history of biased claims administration that sparked an investigation of its claims practices by the United States Department of Labor ('DOL') and dozens of state regulatory authorities, and culminated with [defendant] paying a multi-million dollar fine and hundreds of millions of dollars to past claimants." *Warner v. Unum Life Ins. Co. of Am.*, 2013 WL 3874060, at *3 (N.D. Ill. July 26, 2013). Relying on *Glenn*, the court found this "documented history of biased claims administration . . . suggests this may not be a 'run-of-the-mill case.'" *Id.* at *4 (internal quotation omitted).

However, in *Weddington*, the court denied discovery, noting that the plaintiff failed to allege enough evidence to demonstrate that this was more than a "run-of-the-mill" case. *Weddington*, 2015 WL 6407764, at *3. The plaintiff asserted that the administrator wrongly assessed the medical evidence. The court noted that the plaintiff "naturally is unhappy about the disposition she received, but her assertion that Aetna ignored certain documents and/or gave insufficient weight to the opinions of her treating physicians merely places this case squarely within the category of the 'typical' benefits challenge case (the 'run-of-the-mill' case) for which additional discovery is not allowed." *Id.* at *4. *See also Gebert v. Thrivent Fin. for*

*Lutherans Grp. Disability Income Ins. Plan*, No. 13-C-170, 2013 WL 6858531, at *2-3 (E.D. Wis. Dec. 30, 2013) (where the plaintiff alleged that the defendant plan administrator improperly relied on the opinion of an independent medical consultant, the court found she was unable to make a prima facie showing that would entitle her to limited discovery because the record contained no evidence of a history of government fines or historical bias or other factors indicating that something untoward had happened; rather, her claim was a run-of-the-mill situation).

Here, Plaintiff seeks information on whether Aetna followed its own procedures and protocols with respect to using vocational opinions to review claims, and whether there are conflict procedures in place. Plaintiff relies heavily on cases that predate *Dennison* and argues that he meets his burden by alleging Aetna's structural conflict of interest satisfies the *prima facie* showing for limited discovery. (Dkt. 29 at 15). Yet *Dennison* explicitly reaffirmed the two-step holding in *Semien* and cases in this district following *Dennison* have rejected this argument: "We read *Dennison* as saying that a claimant [ ] cannot obtain discovery merely by pointing to a structural conflict, as that approach would open the door too broadly." *Weddington*, 2015 WL 6407764, at *3. In his reply, Plaintiff clarifies that the specific instance of misconduct is "that Aetna disregarded the first vocational report by Nancy Robinson (Dkt. 1, Ex. 3)—which supported continuation of benefits—in order to elicit a new vocational report that would support termination (Vocational Review of Tamara Starbuck, Dkt. 29, Ex. D). This is an instance of a claims

administrator shopping for a report that will support a termination of benefits." (Dkt. 35 at 6). But allegations that Aetna gave insufficient weight to Robinson's report makes this a "run-of-the-mill" case for which additional discovery is not allowed.

Moreover, Aetna did not disregard Robinson's report and "elicit a new vocational report." (Dkt. 35 at 6). Rather, a TSA addendum was commissioned in response to *Plaintiff's appeal* which asserted that Robinson's report incorrectly calculates Schrock's reasonable wage at 70% of his pre-disability earnings, rather than 80%. The Vocational Rehabilitation department recalculated whether any occupations exist using the 80% of pre-disability earnings figure. Based on the TSA Addendum, the appeal specialist concluded that there was one occupation, Geodetic Computator, that met the reasonable wage under both scales.

Additionally, Plaintiff asserts that the "lack of any salary.com data for [Geodetic Computator] in two separate [vocational] reviewers' opinions suggests that there are no such jobs within a reasonable geographical area." (Dkt. 29 ¶ 23). This is incorrect. Starbucks's report included the salary.com mean wage for Geodetic Computator. (Dkt. 29-5 at 4). Using both the BLS and salary.com scales, Starbucks found that both mean wages were above Schrock's reasonable wage. Based on this, Aetna affirmed the original finding, noting that one occupation, Geodetic Computerator, existed that satisfied both the BLS mean wage and salary.com mean

wage.[1] Plaintiff's contention that the claims examiner ignored the salary.com statistics in Robinson's report is belied by the fact that salary.com statistics were relied on in appeal. But even if the claims examiner chose to use the BLS mean wage, and ignore the salary.com wage, there is no evidence that this presents an "instance of misconduct" to open the door to discovery. *Dennison*, 710 F.3d at 746 ("[W]e do not think that benefits review officers should be subjected to extensive discovery on a thinly based suspicion that their decision was tainted by a conflict of interest.").

Plaintiff also argues that the claims examiner failed to reconcile her decision with the Social Security Administration (SSA) decision, which determined Plaintiff was disabled. (Dkt. 29 ¶ 17). A finding by the SSA does not mean that Plaintiff is entitled to benefits under a welfare disability plan pursuant to ERISA. *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 326 (7th Cir. 2007); *Krolnik*, 570 F.3d at 844 ("a finding of disability under the Social Security program need not imply disability for any other purpose"); *Weddington*, 2015 WL 6407764, at *5 (relying on *Krolnik*, the court stated "we observe that Ms. Weddington's receipt of Social Security disability benefits is not relevant to her request for additional discovery"). Similarly, the Court finds that Plaintiff's receipt of Social Security disability benefits is not relevant to her request for additional discovery in this ERISA action.

---

[1] Robinson's report did not identify the salary.com mean wage for Geodetic Computator, or indicate whether a percentile of the mean wage would be an appropriate figure to use. (Dkt. 1-4 at 4-5).

Lastly, Plaintiff argues that neither vocational consultant provided a labor market survey. (Dkt. 29 ¶ 23). Plaintiff asserts that "[t]he only way to ascertain whether the occupation exists in significant numbers in the market and what the appropriate wage data would be is to conduct a labor market survey." (Dkt. 35 at 8). Plaintiff cites no authority for this proposition. The vocational consultant used the Dictionary of Occupational Titles. *Id.* There is no indication in the record that a market labor survey is required, or that a failure to conduct one presents evidence of a conflict of interest under the standard.

## III. Conclusion

Plaintiff has failed to show the existence of a specific conflict of interest or instance of misconduct. The Court will not discuss *Semien's* second prong—whether the plaintiff is able to make a *prima facie* showing that there is good cause to believe that the limited discovery would reveal a procedural defect. Plaintiff's Motion to Compel Discovery [28] is denied.

E N T E R:

Dated: July 12, 2016

*Mary M Rowland*

———————————————
MARY M. ROWLAND
United States Magistrate Judge